BOWES, Judge.
Plaintiff-appellant, Jewel Carpenter, appeals the granting of a summary judgment by the trial court in favor of Admiral Insurance Company, an alleged insurer of defendant BESCO. We affirm.
Appellant was employed as an electrician at the Celotex Plant in Marrero, Louisiana, prior to and until May, 1977. During the *43 course of his employment, he used a chemical solvent, Besco Formula 371 Safety Solvent, which is known generically as 1,1,1-Triehloroethane. On or about May 23, 1977, while plaintiff was in the process of cleaning a motor, he dropped a motor part into a container of Besco 371, causing a certain amount of solvent to come in contact with his eyes. That incident caused him to suffer central retinal vein occlusion, resulting in blindness in both eyes.
Carpenter filed this suit on March 31, 1978, alleging that BESCO Corporation was liable, as a manufacturer of the solvent, for the injury to his eyes. At the time of filing suit, plaintiff was unaware of the identity of any liability underwriter for BESCO. During discovery, Carpenter was able to ascertain that BESCO had obtained products liability insurance through the Louisiana Companies Insurance Agency and served a subpoena duces tecum on Louisiana Companies in an attempt to ascertain the identity of BESCO’s product liability underwriter.
In response to the subpoena, Louisiana Companies provided Carpenter with the entire underwriting file it maintained on BES-CO, including the policy of insurance issued to BESCO by Admiral Insurance Company.
A copy of that policy, filed into evidence, establishes that Admiral provided BESCO a policy of liability insurance from January 31,1978 through January 31, 1979 for completed operations and products liability covering bodily injury and property damage arising from accidents occurring during the policy period and containing an additional “claims extension period” of twelve months. The language of the policy makes it clear that all claims made or suits filed within twelve months of the policy’s expiration or cancellation were covered, provided that the claim or suit arose out of an occurrence, defined as “accident”, happening after January 31, 1978 and before January 31, 1979, i.e., during the period the policy was in force.
The policy further provided that there would be coverage for claims made even after the expiration of the twelve month extension period, provided that BESCO observed certain formalities in reporting any alleged bodily injury claims “arising out of an occurrence subsequent to January 31, 1978 and prior to January 31, 1979.” Therefore, under certain conditions, Admiral’s policy provided for lengthening the period of coverage past the normal expiration date of the policy, but it did not provide coverage for bodily injury resulting from accidents occurring prior to inception of the policy on January 31, 1978.
The following language is found in the portion of the policy referred to as “Standard Provisions”:
“Coverage is afforded under this policy in accordance with the specific Coverage Parts identified in the Declarations as being a part of this policy and only to Bodily Injury or Property Damage which occurs within the policy territory during the policy period.” ... (emphasis added)
DEFINITIONS
When used in this policy (including endorsements forming a part hereof): ... “Occurrence” means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured; ...
The following is found on the Declarations page:
Policy Period: From: 1-31-78 to 1-31-79 At 12:01 Standard Time at the address of the Named Insured as stated herein.
The page following the Declarations page contains language which spells out the coverage agreement:
1. COVERAGE A — BODILY INJURY LIABILITY COVERAGE B — PROPERTY DAMAGE LIABILITY
ADMIRAL will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:
*44 A. bodily injury or B. property damage to which the insurance applies, caused by an occurrence, if the bodily injury or property damage is included within the completed operations hazard or the products hazard, but only such occurrences:
(a) subsequent to the Retroactive Date set forth in the Schedule, and
(b) prior to the expiration date set forth in the Declarations.
However, if this policy expires or is can-celled, claims may be made during the Claims Extension Period stated in the Schedule for any claim made or suit brought against the Insured arising out of an occurrence subsequent to the Retroactive Date and prior to the expiration or cancellation of this policy. Further, if within the policy period, the Insured complies with Amended Condition 4(a) as respects any alleged bodily injury or property damage arising out of an occurrence subsequent to the Retroactive Date and prior to the expiration or cancellation date, coverage hereunder will apply to any claim made or suit brought as a result of that occurrence, even if such claim or suit arises after the expiration of the Claim Extension Period.
The Schedule appears on the “Additional Declarations” page, designating a 12 month claims extension period and the “RETROACTIVE DATE” as “1/31/78.”
The record shows that plaintiff’s attorney subpoenaed certain BESCO insurance records, including a copy of the Admiral Declarations Page, whereupon there appears a stamped notice to call BESCO’s attention to the important fact that if it notified Admiral of an occurrence during the policy period, the occurrence would be covered, even if a claim or suit were not filed until after the expiration of the twelve month extension period. It appears that the allegations of the plaintiff that the Admiral policy was for “Claims Made” coverage arises from having read that stamped notice or reminder, without having read the policy language quoted above.
In any event, we find that plaintiff’s allegations are erroneous in light of the clear language of the policy.
... [I]t is a well established rule in Louisiana law that a policy of insurance is a contract between the insurer and the insured, and is to be enforced in accordance with its terms where such terms are clear and unambiguous. Such a contract is not to be given a strained, forced or unreasonable interpretation, but a fair, reasonable and sensible construction compatible with the apparent object and plain intention of the parties as expressed in words of the agreement.
Ory v. Louisiana and Southern Life Ins. Co., 352 So.2d 308, 310 (La.App. 4th Cir. 1977).
By the clear language of the policy, Admiral agreed to cover only those accidents occurring during the policy period, “subsequent to” January 31, 1978 “and pri- or to” January 31, 1979. The agreement is the law between the parties and is to be construed according to mutual intent.
Courts must give legal effect to the provisions of an insurance policy according to the true intent of . the parties, which is determined by the wording of the policy when its provisions are clear and unambiguous and do not lead to absurd consequences. LSA-C.C. Art. 1945, Schmieder v. State Farm Fire & Cas. Co., 339 So.2d 390 (La.App. 1st Cir.1976) writs refused 341 So.2d 895 (La.1977).
Gulf Bldg. Services v. Travelers Indem. Co., 435 So.2d 477 (La.App. 4th Cir.1983).
Since the occurrence of plaintiff’s accident was on May 23, 1977, before the inception date of the policy (January 31, 1978), it is clearly not covered by this policy.
Accordingly, for the reasons assigned, we find the trial court was correct in its conclusion that there existed no dispute between the parties as to any material fact and the granting of the motion for summary judgment by the astute trial judge was *45 appropriate. Appellant is to bear all costs of this appeal.
AFFIRMED.